UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDY S. THOMSON,

    Plaintiff,

v.

                                    Civil Action No. 05-CV-70825-DT
                                    Honorable Denise Page Hood

DAVID M. STONE, Assistant
Secretary, Homeland Security for
the Transportation Security
Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**

**I.    BACKGROUND/FACTS**

On March 3, 2005, Plaintiff Wendy S. Thomson filed a *pro se* Verified Complaint alleging Violation of Fourth Amendment Rights and Request for Immediate and Permanent Injunctive Relief. The Court scheduled the hearing on Plaintiff's Motion for Injunctive Relief, considered by the Court as a Motion for Preliminary Injunction for March 11, 2005. On March 8, 2005, James C. Lekmanski filed an appearance on behalf of Plaintiff as "Of Counsel." On March 21, 2005, Defendant filed a Motion to Strike the attorney's appearance as "Of Counsel" claiming that hybrid representation of a *pro se* plaintiff is inappropriate. On March 25, 2005, Defendant David M. Stone filed a brief in opposition to Plaintiff's Motion for Preliminary Injunction. Plaintiff filed a Reply on April 1, 2005, along with an attorney appearance by Mr. Klemanski.

A hearing was held on the matter on April 11, 2005 and the Court allowed the parties to submit supplemental briefs and affidavits from the parties. On May 9, 2005, Defendant filed the instant Motion to Dismiss and/or for Summary Judgment. A response, a reply and supplemental

brief have been filed and a hearing held on the matter.

Plaintiff's right leg was amputated at the knee at the age of four and she wears a total-contact full suction socket endo-skeletal prosthesis with a sealed full foam cosmetic covering. The prosthesis is completely covered toe to hip by a sealed heavy-duty, silicone protective covering, covered by a knit cosmetic full coverage stocking. The prosthetic mechanics are metallic in nature and extend from the right knee to the bottom of the foot.

Plaintiff travels in the course of her employment as a consultant. She made work-related trips on December 1, 12, and 15, 2004 and February 12, and 16, 2005. Plaintiff made personal trips on December 23 and 31, 2004. Plaintiff claims that each time she presents herself at the screening station at the Detroit Metropolitan Airport and other airports, such as Dulles International Airport, she is subjected to humiliating searches. She announces that her prostheses sets off the metal detector. The employees then call her aside, wand Plaintiff and conduct a full upper body torso pat-down, including extensive contact in and around her breasts. Defendant's employees then swab the toe of Plaintiff's right shoe for explosives testing. Plaintiff claims she complained to Steve Lorincz and Tyrone Stokes at the Detroit Metropolitan Airport and other officials at the Dallas-Fort Worth Airport. She is subjected to humiliating searches. Plaintiff claims she has even been tested for explosives on the wrong leg–the left leg.

At the preliminary injunction hearing, in response to the Court's question regarding Plaintiff's specific allegations, Plaintiff's counsel indicated that they had no objection to the screening procedures if followed and that Plaintiff was not seeking "unencumbered access" to airport boarding gates. Plaintiff in her supplemental brief after the preliminary injunction sought a preliminary injunction order requiring the Transportation Security Administration ("TSA") to only

screen Plaintiff following the procedures described in paragraph 25 of the Declaration of Sandra Cammaroto.  Defendant filed a motion to dismiss for failure to state a claim because Plaintiff has failed to request to amend her Complaint to add new claims and relief.

Plaintiff thereafter filed a Motion to Amend Complaint which was granted by the Magistrate Judge in an Order dated February 22, 2006.  The Verified First Amended Complaint alleges in a one-count claim that Defendant, through its agents and employees, performs unreasonable, overly broad and personally intrusive searches, in violation of Plaintiff's Fourth Amendment rights.  Plaintiff claims that "[e]xercising mandatory hand and upper-body pat-downs for explosives based upon a lower extremity alarm amounts to the 'flying while handicapped' equivalent to 'driving while black', and as such unconstitutionally amounts to profiling."  (Verified First Amended Complaint, ¶ 68)

II.  ANALYSIS

   A.  Standard

Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted.  This type of motion tests the legal sufficiency of the plaintiff's Complaint.  *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986).  In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the Complaint must be treated as true.  *Janan v. Trammell*, 785 F.2d 557, 558 (6th Cir. 1986).  If matters outside the pleading are presented in a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment under Rule 56(b) and disposed of as provided in Rule 56.

### B.     Abandonment of Claim

Defendant claims that in light of Plaintiff's counsel's remarks at the April 11, 2005 hearing and Plaintiff's subsequent supplemental brief, Plaintiff has abandoned the claim and relief sought in her original complaint. In her original claim, Defendant argues Plaintiff sought an injunction prohibiting TSA from conducting "all hand and upper-body pat downs" of her person, and "to otherwise allow Plaintiff unencumbered access to airport boarding gates." (Complaint, p. 8) At the preliminary injunction hearing, Plaintiff's counsel requested that the Court issue an order requiring TSA to strictly follow its procedures as outlined in the supplemental affidavit submitted by the Government. Defendant claims Plaintiff is now arguing that any deviation from TSA's process represents an unreasonable search under the Fourth Amendment, which is not a claim in her Complaint. Defendant argues Plaintiff has never sought to amend her Complaint, therefore, the Court cannot consider this new claim without a formal Amended Complaint. Defendant seeks dismissal of the Complaint based on Plaintiff's failure to seek amendment and for lack of subject matter jurisdiction.

In response, Plaintiff claims Defendant misinterprets, misunderstands, or misstates Plaintiff's position. Plaintiff claims she is merely asking that any search be compatible with the Fourth Amendment. Plaintiff is claiming that under no circumstances is the touching of her breasts, buttocks, upper thighs, and crotch justified under any circumstances. Plaintiff seeks default judgment since Defendant has not timely responded to the Verified Complaint under Rule 55. Plaintiff also seeks summary judgment in her favor based on her affidavit.

### B.     Plaintiff's Motion for Default and Default Judgment

The Court will not consider Plaintiff's Motion for Default and Default Judgment since the

"motion" was not filed in a form of a motion but as a "response" to Defendant's motion. In any event, Plaintiff has not sought a Clerk's Entry of Default with *the Clerk* as required by Rule 55(a) of the Rules of Civil Procedures. Defendant is not in default since a Rule 12(b)(6) motion is a proper defense pleading. See Fed. R. Civ. P. 12(a)(4)(A); *Ashby v. McKenna,* 331 F.3d 1148, 1152 (10th Cir. 2003). Also, because the Government is the defendant, default judgment cannot be entered against it under Fed. R. Civ. P. Rule 55(e)("No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court.").

  **C.**  **Jurisdiction**

Plaintiff disputes the Government's argument that she had abandoned her claim. A review of the one-Count Verified Complaint and Verified First Amended Complaint shows that Plaintiff is alleging a violation of the Fourth Amendment protections for unreasonable searches. The Government argued in its response to the preliminary injunction motion and in its Motion to Dismiss that this Court may lack subject matter jurisdiction over this matter. It is noted that the original Verified Complaint was filed *pro se*. Generally, in order to file a suit against the Government's agency based on constitutional violation, a plaintiff must file a suit pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Plaintiff's original and First Amended Complaint do not allege a suit under *Bivens.*

Plaintiff essentially claims that the Standard Operating Procedures established by the TSA regarding Persons with Disabilities should be followed, but have not been followed by the screeners at various airports. Plaintiff's response to the Government's Motion to Dismiss, however, does not address the Government's argument that this Court does not have subject matter jurisdiction over

her claim.

Plaintiff filed a Motion to Amend the Complaint in December 2005, which was referred to the Magistrate Judge. The Magistrate Judge granted Plaintiff's Motion to Amend. However, because the Government has raised the argument that this Court might lack subject matter jurisdiction under 49 U.S.C. § 46110 because the Court of Appeals is vested with any appeals of any agency orders, the Court must first satisfy itself whether the Court has subject matter jurisdiction over the claims.

The relevant portion of 49 U.S.C. § 46110 state:

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security ... or the Administrator of the Federal Aviation Administration ...) In whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.
>
> * * *
>
> ... When the petition is sent to the Secretary, Under Secretary, or Administrator, the court [of appeals] has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Under Secretary, or Administrator to conduct further proceedings.

49 U.S.C. § 46110(a), (c) (2005). Courts have held that Security Directives issued by the TSA are "orders" within the meaning of § 46110. *Green v. Transportation Security Administration,* 351 F.Supp.2d 1119, 1125 (W.D. Wash. 2005). "Courts have given a broad construction to the term 'order' in Section 1486(a) [46110's predecessor]." *Sierra Club v. Skinner*, 885 F.2d 591, 592 (9th Cir. 1989). The Ninth Circuit has explained that an,

> "Order" carries a note of finality, and applies to any agency decision which imposes an obligation, denies a right, or fixes some legal relationship. In other words, if the order provides a "definitive" statement of the agency's position, has a "direct and immediate" effect on the day-to-day business of the party asserting wrongdoing, and envisions "immediate compliance with its terms," the order has sufficient finality to warrant the appeal offered by section [46110].

*Crist v. Leippe,* 138 F.3d 801, 804 (9th Cir. 1998) (quoting *Mace v. Skinner,* 34 F.3d 854, 857 (9th Cir. 1994)). The Sixth Circuit has reviewed changes by the FAA regarding procedures and airspace delegation in the Detroit Metro airspace which were implemented on November 16, 1989, without a final "order" by the agency. *Charter Twp. of Huron, Michigan v. Richards,* 997 F.2d 1168, 1169 (6th Cir. 1993). The Sixth Circuit was asked, under 49 U.S.C. § 1486(a), the predecessor to § 46110, to enjoin the changes and return the airport to its pre-November 1989 flight tracts. *Id.* at 1171-72. The Sixth Circuit has also found that § 1486(a) provides significant procedural safeguards with ultimate review in the court of appeals where a litigant is free to raise any constitutional issues. *Robinson v. Dow,* 522 F.2d 855, 858 (6th Cir. 1975).

Following the attacks on September 11, 2001, Congress enacted statutes which gave the TSA the authority to protect the public from violence and piracy aboard aircrafts. *See* 49 U.S.C. § 44903(b). The Under Secretary of the TSA is given the responsibility for security over all modes of transportation, for the day-to-day Federal security screening operations for passenger air transportation, and to develop standards and training screening personnel. 49 U.S.C. §§ 114(d) and (e). The TSA Under Secretary is required to provide screening of all passengers and property on passenger aircraft. 49 U.S.C. § 44901(a). The TSA Under Secretary has the authority to issue, rescind, and revise such regulations as are necessary to carry out the functions of the Administration. 49 U.S.C. § 114(l)(1). Courts that have reviewed the recent changes in screening procedures under

7

the TSA have held that the courts of appeals pursuant to 49 U.S.C. §§ 46110(a) and (c), not the district courts, have exclusive jurisdiction to review orders, including Security Directives issued by the TSA. *See Green,* 351 F.Supp.2d at 1125. If a claim is "inescapably intertwined" with a review of the procedures and merits surrounding a procedure, jurisdiction is solely with the courts of appeals. *Id.* at 1125-26. If the claim raises "broad constitutional challenges" which do not require a review of the procedures, then the district court has subjection matter jurisdiction to consider the constitutional challenges. *Id.*

In this case, Plaintiff claims that the Government "present an ever changing explanation of its general procedure and protocol while avoiding any discussion of the training provided to the security personnel in the airports and completely ignores how the specific searches of this specific Plaintiff fit within the described procedures." (Plaintiff's Resp., p. 3) Plaintiff further claims that the Government "has not followed its own protocol ... and the procedures that are articulated ... do not have a rational connection between public safety and the right for this Plaintiff to be free from unreasonable searches that are prohibited by the fourth Amendment." (Plaintiff's Resp., pp. 3-4)

The regulations governing the TSA are set forth in 40 C.F.R. § 1500 *et seq.* 40 C.F.R. § 1500.1 ("This chapter, this subchapter and this part apply to all matters regulated by the Transportation Security Administration.") Subchapter C provides regulations for Civil Aviation Security. 40 C.F.R. § 1540.1 *et seq.* The regulation states that no person may tamper or interfere with, compromise, modify, attempt to circumvent any security system, measure, or procedure implement under this subchapter. 40 C.F.R. § 1540.105. No individual may enter a "sterile area" which is controlled by TSA or board an aircraft without submitting to the screening and inspection of his or her person in accordance with the procedures being applied to control access to that area

or aircraft under this subchapter. 40 C.F.R. § 1540.107. A person may not interfere with screening personnel in the performance of their screening duties. 40 C.F.R. § 1540.109. The operation of airports regarding aviation security is governed by these regulations. 40 C.F.R. § 1542.1. All airport security programs must be approved by the TSA. 40 C.F.R. § 1542.101(a)(5). The regulations prohibit any individual who does not consent to a search or inspection of his or her person in accordance with the system prescribed must be denied entry into a sterile area and must refuse to transport such persons. 40 C.F.R. § 1544.201(c). All persons must be inspected for weapons, explosives and incendiaries. 40 C.F.R. § 1544.201(b). All individuals must be inspected by TSA before boarding or loading on an aircraft. 40 C.F.R. § 1544.207(b). Any metal detection devices must meet the standards established by TSA. 40 C.F.R. § 1544.209(b). Screener qualifications are governed by these regulations. 40 C.F.R. §§ 1544.401, 403, 405, 407, 409, 411.

In addition to the statutes and regulations governing TSA's security and screening procedures, there various policies, procedures and programs regarding how to specifically perform the screening procedures, including physical searches and integrating new technologies. (Sultan Decl.) TSA has created procedures specifically for persons with disabilities. (Cammaroto Decl., ¶ 2) Since September 11, 2001, the security screening process for persons with disabilities has evolved and is ongoing. (Cammaroto Decl., ¶ 13)

The Court finds that the statutes, regulations, policies, and programs governing TSA's screening procedures at the airports are extensive and changes are ongoing. Plaintiff's request for injunctive relief based on a Fourth Amendment violation claim is "inescapably intertwined" with a review of the various statutes, regulations, policies and programs governing TSA's screening procedures. To determine whether the procedures performed by the screeners on Plaintiff in the past

and to determine whether Plaintiff's injunctive relief regarding the procedures violate Plaintiff's Fourth Amendment rights would necessarily require a review of the statutes, regulations, policies, procedures and programs established by the TSA to screen all individuals, and, specifically those with disabilities. Because Plaintiff's claim is "inescapably intertwined" with a review of the procedures and merits surrounding TSA's procedures governing screening persons with disabilities and screening persons, generally, jurisdiction is solely with the courts of appeals. *See Green,* 351 F.Supp.2d at 1125-26. Plaintiff's First Amended Complaint does not change the Court's analysis on whether the Court has subject matter jurisdiction over her Fourth Amendment violation claim. The Court dismisses Plaintiff's original and First Amended Complaint, without prejudice to Plaintiff filing a review with the Court of Appeals as set forth in 49 U.S.C. § 46110.

### III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction and Permanent Injunctive Relief **(Docket No. 2, filed March 3, 2005)** is DENIED as MOOT, the Court finding it does not have the authority to issue injunctive relief because the Court lacks subject matter jurisdiction over the claim.

IT IS FURTHER ORDERED that Defendant's Motion to Strike Attorney Appearance **(Docket No. 7, filed March 21, 2005)** is MOOT.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss and/or for Summary Judgment **(Docket No. 17, filed May 9, 2005)** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Counter-Motion for Entry of Default and Default Judgment and Counter-Motion for Summary Judgment **(Docket No. 20, filed May 23, 2005)**

is DENIED.

      IT IS FURTHER ORDERED that Plaintiff's original Complaint and Amended Complaint are DISMISSED without prejudice.

                                                 /s/ DENISE PAGE HOOD  
                                                 DENISE PAGE HOOD  
DATED: March 27, 2006                            United States District Judge

      I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2006, by electronic and/or ordinary mail.

                                                 s/William F. Lewis  
                                                 Case Manager